J-S62008-18

2018 PA Super 338

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES LORENZO BROWN | : | |
| | : | |
| Appellant | : | No. 1904 EDA 2016 |

Appeal from the Judgment of Sentence June 3, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009330-2011

BEFORE:  LAZARUS, J., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

OPINION BY LAZARUS, J.:                    **FILED DECEMBER 11, 2018**

James Lorenzo Brown appeals from his judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after a jury convicted him of robbery[1] and possessing instruments of crime ("PIC"),[2] and the trial court convicted him of possession of a firearm by person prohibited.[3]  Upon careful review, we affirm.

The trial court set forth the facts of this matter as follows:

On June 26, 2015, Gwenervere Presley (hereinafter, "the Complainant") had her aunt drive her to the ATM at 50th and Baltimore Avenue, in the city and county of Philadelphia.  The Complain[an]t's 13[-]year[-]old daughter, Royalti, rode with them.  They arrived at the ATM at approximately 11:30 a.m.  The Complainant exited the vehicle.  Her aunt and Royalti waited in the car.  The Complainant withdrew $100 from the ATM.  She put

_____

[1] 18 Pa.C.S.A. § 3701.

[2] 18 Pa.C.S.A. § 907.

[3] 18 Pa.C.S.A. § 6105.

the money in her pocket. She then proceeded to make another ATM withdrawal. As she was waiting for the transaction to be completed, she felt someone standing unusually close to her. She looked up and saw a man's face. He was standing to her left side, right next to her. The man showed the Complainant a gun in his waist. She started screaming. The man then pointed the gun at her and told her to give him her money. She began to scream more frantically. She feared for her life. She gave the man $100. He then turned around, walked to a car parked on the corner of 50th and Baltimore Avenue, entered the passenger side of the car, and rode off. Royalti had the presence of mind to get the license plate number off the car the man entered and place it in her cell phone.

Trial Court Opinion, 11/29/17, at 1-2 (citations to record omitted).

Using the tag number obtained by the Complainant's daughter, police identified Ernest Matthews as the owner of the vehicle in which the suspect fled. Upon questioning, Matthews identified Brown as the individual seen riding away in his car after the Complainant was robbed. On July 12, 2011, the Complainant identified Brown from a photo array as the man who had robbed her.

On October 29, 2015, a jury found Brown guilty of robbery and PIC. Following the jury verdict, the parties proceeded to a stipulated waiver trial on the charge of possession of firearm by person prohibited, after which the court entered a guilty verdict. On May 11, 2016, the court sentenced Brown to an aggregate sentence of 32½ to 65 years' imprisonment.[4] On June 16, 2016, Brown filed a timely notice of appeal. On August 9, 2016, the trial court

---

[4] The court initially sentenced Brown to an aggregate of 37½ to 75 years' incarceration. However, upon consideration of Brown's post-sentence motion, the court agreed that it had exceeded the statutory maximum on the firearm charge and resentenced Brown accordingly.

- 2 -

ordered Brown to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days. Brown failed to timely file his Rule 1925(b) statement and the trial court subsequently entered a Rule 1925(a) opinion noting Brown's lack of compliance. On January 10, 2017, this Court remanded the case to the trial court for the filing of a Rule 1925(b) statement. Brown timely complied, and the trial court issued an updated Rule 1925(a) opinion. Brown raises the following issues on appeal:

> 1. Did not the [trial] court err in denying [Brown's] motion to admit expert testimony on the subject of eyewitness identification?
>
> 2. Did not the [trial] court err in denying [Brown's] motion *in limine* to prohibit inadmissible evidence and argument regarding the accuracy of the witness' identification of [Brown] as related to her level of confidence in her identification where scientific evidence proves that there is no correlation between how certain a witness is of his/her identification and the accuracy of that identification?
>
> 3. Did not the trial court err in denying [Brown's] request for supplemental jury instructions which were carefully targeted toward juror recognition of the validity of deep-seated beliefs on issues crucial to [Brown's] defense?
>
> 4. Did not the [trial] court err by denying [Brown's] "Motion to Dismiss or in Alternative Preclude Testimony" for the Commonwealth's failure to preserve exculpatory material?

Brief of Appellant, at 4.

First, Brown contends that the trial court erred in denying his motion to admit expert testimony on the subject of eyewitness identification. Specifically, Brown argues that the "significant misunderstandings regarding perception, memory and recall and the reliability of eyewitness identification"

- 3 -

of jurors can only be addressed through expert testimony, Appellant's Brief at 16, and that in light of the Supreme Court's recent rejection of a *per se* ban on expert testimony, he is entitled to a new trial. **See Commonwealth v. Walker**, 92 A.3d 766, 787 (Pa. 2014) (holding admission of expert testimony regarding eyewitness identification not *per se* impermissible but instead subject to discretionary decision of trial court).

This Court evaluates the admission of evidence by an abuse of discretion standard. **Commonwealth v. Alicia**, 92 A.3d 753, 760 (Pa. 2014). An abuse of discretion is not merely an error of judgment. Rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, or ill-will, as shown by the evidence of record. **Commonwealth v. Busanet**, 817 A.2d 1060, 1076 (Pa. 2002).

While our Supreme Court has abandoned the absolute ban on expert testimony regarding eyewitness identification, its admission is not mandatory. Rather, such expert testimony is generally admissible only when it is relevant and where "the Commonwealth's case is solely or primarily dependent upon eyewitness testimony." **Walker**, 92 A.3d at 787.

The matter *sub judice* is distinguishable from **Walker**. In **Walker**, the Commonwealth's primary evidence consisted of a cross-racial identification, at night, where the victim had a fleeting view of the perpetrator. Additionally, there was no corroborating evidence as to the identification of the perpetrator.

In contrast, here, the Complainant and her daughter viewed the assailant in daylight and Complainant was able to specifically describe Brown and his clothing, which included a Philadelphia Eagles jersey. The Complainant also testified that the perpetrator fled the scene in the passenger seat of a black vehicle. The Complainant's daughter corroborated her mother's description of the man, whom she saw flee to the vehicle. Using the license number recorded by the Complainant's daughter, authorities located the vehicle's owner, Ernest Matthews. Matthews confirmed that Brown was in Matthews' black vehicle on the day of the robbery and corroborated the description of his attire. Matthews further testified that Brown had no money when he left the vehicle and returned moments later with money in his hand. Finally, police obtained surveillance footage from the bank, and both Royalti and Matthews identified Brown and his clothing in photographic stills from the footage.

Because the eyewitness identification in this case was substantially corroborated by independent evidence, the trial court acted within its discretion in denying the admission of expert testimony relating to the identification.

Brown next argues that the trial court improperly denied his motion *in limine* to bar witness testimony and prosecutorial argument concerning witness confidence. Specifically, he argues that the Complainant's testimony concerning her own confidence in her identification of him should be barred

because "[s]cientific evidence proves no correlation between how certain a witness is of his/her identification and how accurate the identification is." Appellant's Brief, at 18.

The standard of review on appeal of a denial of a motion *in limine* is abuse of discretion. **Commonwealth v. Stokes**, 78 A.3d 644, 654 (Pa. Super. 2013). "The trial court has considerable discretion in ruling upon whether testimony is 'fact' or 'opinion' testimony, and if 'opinion,' whether it should be admitted or excluded." **Commonwealth v. Galloway**, 485 A.2d 776, 781 (Pa. Super. 1984).

In his brief, Brown fails to identify any specific testimony in which the Complainant vouches for the accuracy of, or characterizes her degree of certainty in, her identification of Brown. In order for this Court to determine whether Brown was prejudiced by the trial court's adverse ruling on his motion *in limine*, he must, at a minimum, direct us to the specific places in the record where allegedly prejudicial testimony was elicited. He has failed to do so, thus substantially impeding our review of this issue. Accordingly, Brown has waived his claim. **Commonwealth v. Smith**, 985 A.2d 886, 906-07 (Pa. 2009) (failure to properly develop argument, with proper citation to record, results in waiver of claim); Pa.R.A.P. 2101 (when defects in brief impede our ability to conduct meaningful appellate review, we may dismiss appeal entirely or find certain issues waived).

Brown next alleges that the trial court erred in refusing to allow his requested jury instruction as to eyewitness identification because "the instant case [] involved an eyewitness identification in a situation of high stress involving a weapon that happened very quickly." Appellant's Brief, at 22. Brown requested that the trial court instruct the jury using an "enhanced jury charge[]" adopted by the Supreme Court of New Jersey in **State of New Jersey v. Henderson**, 27 A.3d 872 (N.J. 2011). Brown is entitled to no relief.

We review a trial court's refusal to give a specific jury instruction for an abuse of discretion or error of law. **Commonwealth v. Demarco**, 809 A.2d 256, 260–61 (Pa. 2002). The trial court has broad discretion in its phrasing of jury instructions "so long as the issue is adequately, accurately, and clearly presented to the jury for its consideration." **Commonwealth v. Bey**, 375 A.2d 1304, 1310 (Pa. 1977); **Commonwealth v. Holder**, 765 A.2d 1156, 1159 (Pa. Super. 2001).

Brown's argument in support of this claim is undeveloped, unsupported and, as a result, waived. Brown asks us to adopt and apply extrajudicial law without explaining why Pennsylvania's framework is insufficient to address his concerns. Additionally, while he provides us with the citation to **Henderson**, he does not identify—much less elaborate on—any of the specific factors articulated in the New Jersey decision. Because Brown's argument consists of

a bald assertion, devoid of any discussion or reliable case law, we are compelled to find his claim waived.[5]  ***Smith***, ***supra***.

_____

[5] Even if Brown had not waived this claim, he would be entitled to no relief. The trial court instructed the jury as follows:

> Some of the witnesses in their testimony identified the defendant as the person who committed the crime. In evaluating and identifying witness testimony, in addition to the other instructions I have provided to you for judging the testimony of witnesses, you should consider the additional following factors: Did the witness have a good opportunity to observe the perpetrator of the offense? Was there sufficient lighting for the witness to make his or her observations? Was the witness close enough to the individual to note the facial and other physical characteristics as well as any clothing he or she was wearing? Has the witness made a prior identification of the defendant as the perpetrator of these crimes at any other proceedings? Was the witness's identification positive or was it qualified by any hedging or inconsistency? During the course of this case did the witness identify anyone else as the perpetrator?
>
> . . .
>
> Now, there is a question of whether some of those identifications are accurate. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution.
>
> Identification testimony must be received with caution if the witness, because of bad position, poor lighting, or other reasons, did not have a good opportunity to observe the criminal; if the witness in their testimony is not positive as to the identity; if the witness's positive testimony as to identity is weakened by qualification, hedging, or inconsistencies in the rest of their testimony; by their not identifying the defendant or identifying someone else as the criminal before the trial began. If you believe that one or more of these factors are present, then you must consider with caution the witness's testimony identifying the defendant as the person who committed the crime. If, however, you do not believe that at least one of these factors is present,

Lastly, Brown claims that the trial court erred by denying his motion to preclude the photographic stills from the bank's surveillance footage as a discovery sanction for the Commonwealth's failure to preserve evidence. Brown asserts that the Commonwealth's failure to preserve the surveillance video "violated [his] absolute discovery rights pursuant to [Pa.R.Crim.P.] 573, and, as well, his rights to both a fair trial and to present a defense simply because the court refused to impose any sanctions[.]" Brief of Appellant, at 27. He is entitled to no relief.

> If a discovery violation occurs, the court may grant a trial continuance or prohibit the introduction of the evidence or may enter any order it deems just under the circumstances. Pa.R.Crim.P. 573(E)[]. The trial court has broad discretion in choosing the appropriate remedy for a discovery violation. **Commonwealth v. Johnson**, [] 727 A.2d 1089 ([Pa.] 1999). Our scope of review is whether the court abused its discretion in not excluding evidence pursuant to Rule 573(E). **Id.** (citing **Commonwealth v. Jones**, [] 668 A.2d 491 ([Pa.] 1995)). A defendant seeking relief from a discovery violation must demonstrate prejudice. **Id.** (citing **Commonwealth v. Counterman**, [] 719 A.2d 284 ([Pa.] 1998)). A violation of discovery "does not automatically entitle appellant to a new trial." **Jones**, 668 A.2d at 513[]. Rather, an appellant must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure. **Id.** (citing **Commonwealth v. Chambers**, [] 599 A.2d 630, 636–38 ([Pa.] 1991) (no error in

---

then you need not receive the testimony with caution. You may treat it like any other testimony.

N.T. Trial, 10/29/15, at 96-98.

The instruction given by the trial court adequately, accurately, and clearly presented the issue and the law to the jury for its consideration. **Bey**, **supra**.

denial of mistrial motion for untimely disclosure where appellant cannot demonstrate prejudice)).

***Commonwealth v. Causey***, 833 A.2d 165, 171 (Pa. Super. 2003).

Here, Brown's claim involves the loss of the original bank surveillance footage, from which the stills presented at trial were obtained. The trial court found the circumstances surrounding the loss of the video footage to be as follows:

> Detective Darren Lindsey – the lead detective in the case – testified at length during trial about the missing video. The robbery occurred on June 26, 2011[,] and the detective was transferred to East Detectives in December, 2011. The detective stated that when he received a call in March or April of 2012 requesting the video he "went back to Southwest Detectives [his previous post] to look for [the] file [that contained the video], but the file was no longer in central filing . . . [the detective had] never seen a file disappear. [He had] no idea how the file was lost." N.T. 10/28/2015 at 22. However, the detective further testified that all the documents in the file that went missing, including the photographic stills from the missing file, were previously uploaded to the system directly linked to the District Attorney's office and was no different than what was presented at trial.

Trial Court Opinion, 11/29/17, at 14.

Pennsylvania Rule of Criminal Procedure 573 provides, in relevant part, as follows

> (B) Disclosure by the Commonwealth.
>
> (1) Mandatory. In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

- 10 -

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth;

. . .

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence[.]

Pa.R.Crim.P. 573(B).

Pennsylvania Rule of Criminal Procedure 573 governs pre-trial discovery in criminal cases. The rule requires the disclosure of evidence by the Commonwealth where it is: "(1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor." ***Commonwealth v. Santos***, 176 A.3d 877, 882 (Pa. Super. 2017) (citations omitted).

Mandatory discovery includes, *inter alia*:

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth.

Pa.R.Crim.P. 573 (B)(1)(a). The rule also provides remedial measures to address violations as follows:

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it deems just under the circumstances.

Pa.R.Crim.P. 573(E).

- 11 -

The decision of the United States Supreme Court in **Brady v. Maryland**, 373 U.S. 83 (1963), also governs pre-trial discovery in criminal matters. Rule 573 imposes greater obligations upon prosecutors than the **Brady** requirements. **Commonwealth v. Maldonodo**, 173 A.3d 769, 774 (Pa. Super. 2017). Nevertheless, our cases frequently analyze whether a particular discovery sanction was justified by analyzing whether the evidence was required to be disclosed pursuant to **Brady**. **See Maldonodo**, 173 A.3d at 774.

In **Brady**, the Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." **Id.** at 84. "There are three necessary components that demonstrate a violation of the **Brady** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued." **Commonwealth v. Burke**, 781 A.2d 1136, 1141 (Pa. 2001). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **Strickler v. Greene**, 527 U.S. 263 (1999) (citation omitted). Finally, "unless a criminal defendant can show bad faith on the part the police, failure to preserve potentially useful evidence does not constitute a denial of

- 12 -

due process of law." ***Commonwealth v. Small***, 741 A.2d 666, 676 (Pa. 1999), quoting ***Arizona v. Youngblood***, 488 U.S. 51, 58 (1988).

Here, the trial court concluded that the Commonwealth did not act in bad faith by intentionally suppressing the surveillance video and, thus, declined to impose sanctions.

> [T]he Commonwealth did not act in bad faith in failing to preserve the video evidence. The Commonwealth made a bona fide search for the video tape in question and procured the photographic stills of the videotape from the garage of a detective one year after the arrest. These photographic stills were then made available to the Defendant.

Trial Court Opinion, 11/29/17, at 14. The record supports this conclusion.

Brown also failed to demonstrate prejudice. ***Causey***, ***supra***. First, there was substantial evidence of Brown's guilt presented at trial, including two eyewitnesses who identified Brown as the perpetrator. Nor does Brown argue that his trial strategy would have been different had the videotape been available. ***See id.*** (appellant must demonstrate how timely disclosure would have affected trial strategy or how he was otherwise prejudiced). As the trial court further noted:

> [T]he Defendant fails to demonstrate what prejudice the late disclosure of photos and loss of the videotape caused. Defense counsel conceded that [it was] "not an issue that [the photographs] weren't passed to us in sufficient time." N.T., 10/22/2015, at 15. Thus, the Defendant's only remaining claim regarding preclusion as a sanction for violation of discovery rules rests purely around the loss of the videotape. If it becomes apparent that a party has failed to comply with Rule 573, the trial court has broad discretion in choosing an appropriate remedy. The record reflects that it cannot be said the loss of the videotape evidence denied the Defendant a fair trial. The detective that had

possession of the videotape was called as a witness at trial and the Defendant was afforded the opportunity to question, and impeach, the detective about the missing videotape. Defense counsel specifically asked "And, Officer, you are the only one, and the bank manager, perhaps, who's ever seen this video in this entire time." N.T. [Trial], 10/28/2015, at 160. Further, the trial court, in providing instructions to the jury prior to deliberation, charged the jury that:

> There is a question about what weight, if any, you should give to the failure of the Commonwealth to produce an item of potential evidence at this trial. In this case that evidence is the video of the incident ... [if you find the three factors present] and there is no satisfactory explanation for the Commonwealth's failure to produce the video at this trial, you may infer, if you choose to do so, that it would have been unfavorable to the Commonwealth.

N.T. [Trial], 10/29/2015, at 98-99. There exist[] sufficient facts within the record to support that the Defendant did not suffer any prejudice through the loss of the videotape and the jury was given specific instructions regarding its loss. Therefore, the trial court did not abuse its discretion by properly denying the preclusion of the photographic stills as a sanction for discovery violations.

Trial Court Opinion, 11/29/17, at 24-25.

In sum, there is no reasonable probability that the outcome of trial would have changed had Brown had access to the surveillance videotape. Thus, the trial court did not abuse its discretion in declining to exclude the still photographs as a discovery sanction, and Brown is entitled to no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/11/18