J-S20023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                   PENNSYLVANIA
:
v.                         :
:
:
:
ANTHONY LEWIS              :
:
Appellant           :      No. 1721 EDA 2022

Appeal from the Judgment of Sentence Entered June 30, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007345-2021

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY DUBOW, J.:                    **FILED JULY 28, 2023**

Appellant, Anthony Lewis, appeals from the Judgment of Sentence imposed after the trial court found Appellant guilty of Possession of a Firearm by a Prohibited Person, Carrying a Firearm Without a License, and Carrying a Firearm in Public in Philadelphia.[1] Appellant challenges the denial of his motion to suppress the firearm and the denial of his motion to preclude the admission of a DNA report. After careful review, we affirm.

On July 31, 2021, two police officers were on a routine patrol in a known high crime area, which was the site of a recent homicide and carjackings. The officers saw several men standing on a corner who appeared to be gambling. Appellant was standing with the group and had a black leather bag across his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6105(a)(1); 18 Pa.C.S. § 6106; 18 Pa.C.S. § 6108, respectively.

body. The officers did not have lights or sirens on and did not speak to any of the men. When the officers pulled over their marked patrol car and one officer opened the car door, Appellant fled the scene. An officer pursued Appellant and eventually caught up to him, by which time Appellant no longer had the black leather bag. The officer surveyed the area and found a black leather bag on the other side of a fence next to where Appellant was detained. The officer recovered a firearm from the bag.

Appellant was charged with the above offenses. Appellant filed a motion to suppress the firearm.

On September 23, 2021, the trial court issued a Non-Jury Scheduling Order stating that all discovery should be completed on or before October 21, 2021, anticipating a trial date of November 12, 2021. On November 10, 2021, the Commonwealth notified defense counsel and the court that the laboratory would not be able to complete the DNA analysis until February. The court granted multiple continuances, ultimately rescheduling the trial for March 21, 2022.

On December 8, 2021, the court denied Appellant's pretrial motion to suppress the firearm.

On February 8, 2022, six weeks before trial, the Commonwealth provided to Appellant's counsel a DNA report, dated February 7, 2022, which indicated that Appellant's DNA was found on the firearm. Appellant did not file a motion for a continuance. Rather, on March 14, 2022, one week before trial,

Appellant filed a motion to preclude the DNA evidence based on the Commonwealth's violation of the September 23, 2021 discovery order.

On March 21, 2022, the trial court dismissed the motion and immediately proceeded to a waiver trial. The trial court found Appellant guilty of all charges.

On June 30, 2022, the court sentenced Appellant to an aggregate term of two to four years of imprisonment followed by two years of probation.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P 1925.

Appellant presents the following issues for our review:

1. Did the Trial Court err in denying Appellant's pretrial motion to suppress the firearm as there was no reasonable suspicion or probable cause to detain and arrest the Appellant and no probable cause to search the bag and recover the firearm. The government violated Appellant's rights against unreasonable search and seizure and unlawful arrest under the U.S. and Pa. Constitutions?

2. Did the Trial Court err in denying the Appellant's pretrial motion to suppress the firearm as the Appellant was unlawfully seized by police who lacked reasonable suspicion or probable case and where the firearm was recovered as a result of forced abandonment. The Appellant was seen committing no crime when the police unlawfully seized him. The government violated Appellant's rights against unreasonable search and seizure and unlawful arrest under the U.S. and Pa. Constitutions?

3. Did the Trial Court err in denying Appellant's pretrial motion to preclude the DNA report as the Commonwealth committed a discovery violation and the proper remedy was to preclude the report from being introduced at trial. This was especially damning and prejudicial as the only evidence tying the Appellant to the firearm was the DNA evidence, as police never saw Appellant actually possessing any firearm, therefore, the evidence would have

otherwise been insufficient to sustain the guilty verdicts for VUFA-6105, 6106, and 6108?

Appellant's Brief at 7.

## A. Reasonable Suspicion

Appellant argues that he was subject to an illegal detention and arrest because officers did not have reasonable suspicion to pursue Appellant and that the search of his bag was likewise illegal. Appellant's Br. at 13. Appellant's arguments are without merit.

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000). There are three defined categories of interaction between citizens and police officers: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *See Commonwealth v. Collins*, 950 A.2d 1041, 1046 (Pa. Super. 2008).

A mere encounter between a police officer and a citizen does not need to be supported by any level of suspicion and "carries no official compulsion on the part of the citizen to stop or to respond." *Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa. Super. 2007). There is no constitutional provision that prohibits police officers from approaching a citizen in public to make inquiries

- 4 -

of them. *See Beasley*, *supra* at 624; *see also Commonwealth v. Lyles*, 97 A.3d 298, 303-04 (Pa. 2014) (finding a mere encounter where two uniformed police officers arrived in an unmarked police car, approached the defendant, and asked for identification).

Police pursuit for the purposes of an investigatory detention can be justified if officers have an objectively reasonable suspicion that crime is afoot. *Commonwealth v. Holmes*, 14 A.3d 89, 96 (Pa. 2011). "Reasonable suspicion must be based on specific and articulable facts, and it must be assessed based upon the totality of the circumstances viewed through the eyes of a trained police officer." *Commonwealth v. Williams*, 980 A.2d 667, 671 (Pa. Super. 2009).

"[U]nprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify [an investigatory] stop under the Fourth Amendment." *In re D.M., supra* at 1164. *See also Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa. Super. 2017) (holding defendant's evasive and suspicious behavior in a high crime area, along with his unprovoked flight, gave officers reasonable suspicion that criminal activity was afoot, justifying investigatory stop); *Commonwealth v. Washington*, 51 A.3d 895, 898 (Pa. Super. 2012) ("nervous, evasive behavior and headlong flight all provoke suspicion of criminal behavior in the context of response to police presence").

A defendant has no standing to contest the search and seizure of items that he has voluntarily abandoned or relinquished because he has no privacy expectation in the property. *Commonwealth v. Byrd*, 987 A.2d 786, 790

(Pa. Super. 2009). If the abandonment is coerced by unlawful police action, then the state-based constitutional principle of forced abandonment forbids using the property for evidentiary purposes. *Id.* at 791. However, a defendant is not entitled to suppression of contraband discarded during flight if police had reasonable suspicion to justify an investigatory stop. ***Commonwealth v. McCoy***, 154 A.3d 813, 816 (Pa. Super. 2017).

Appellant contends that the officers did not observe Appellant gambling or handling any contraband prior to the pursuit, and therefore lacked reasonable suspicion to pursue Appellant and seize the firearm.[2] Appellant's Br. at 13. Appellant also argues that the officers exhibited a show of force by "abruptly stopping the police car," "quickly open[ing] the car door," and staring directly at Appellant while moving toward him, which provoked his flight and led to the forced abandonment of the firearm. ***Id.***

The trial court found that Appellant's unprovoked flight in a high crime area supported the officer's reasonable suspicion that he was engaged in criminal activity. Tr. Ct. Op., filed 12/13/22, at 4. The trial court considered testimony from the officers that the location was a dangerous area known for gambling and other crimes. ***Id.*** Therefore, the court concluded, since

---

[2] Appellant also argues that the officers' testimony was insufficient to establish that the area was known for high crime because the officers lacked experience and had not made any gambling arrests in the area before. Appellant's Br. at 17. However, it is within the lower court's province "to pass on the credibility of witnesses and determine the weight to be given to their testimony." ***Commonwealth v. Clemens***, 66 A.3d 373, 379 (Pa. Super. 2013). We, therefore, defer to the evaluation of the trial court that the testimony of the officers regarding the level of crime in the area was credible.

Appellant abandoned the bag voluntarily during a lawful pursuit, the firearm was properly admitted as evidence. *Id.* at 6.

After reviewing the record and case law, we agree with the trial court's findings. The initial pre-flight interaction between Appellant and the officers constituted a mere encounter, which does not require any level of police suspicion. The officers simply stopped their patrol car and opened the doors after observing what appeared to be gambling on a street corner located in an area known for illicit activities. N.T. Motion, 12/8/21, at 10, 12, 16. The sirens were not on and there was no evidence that the officers even spoke to Appellant. *Id.* Once Appellant spontaneously fled, the officers had reasonable suspicion that criminal activity was afoot. The officers testified that the area where the stop occurred is "known for narcotic sales, gambling . . . [and] a lot of carjacking" and "well known for the high-crime rate." *Id.* at 11, 20. Appellant's unprovoked flight, combined with the high crime area and the officer's observation of purported gambling, supported reasonable suspicion justifying an investigatory detention.

Given that police were lawfully pursuing Appellant, his abandonment of the bag was not a "forced abandonment" that would require suppression of the evidence. *See McCoy*, 154 A.3d at 816. The trial court, therefore, did not err when it denied Appellant's motion to suppress the firearm.

**B. Admissibility of Evidence**

Appellant also argues that the trial court erred in denying his motion to preclude the Commonwealth from admitting DNA evidence linking Appellant

to the recovered firearm. Appellant's Br. at 21. Specifically, Appellant argues that the Commonwealth violated the September 23, 2021 discovery order and prejudiced Appellant's ability to seek a DNA expert, and that the proper remedy was the preclusion of the DNA report. *Id*. Appellant's argument is without merit.

Our standard of review concerning a challenge to the admissibility of evidence is as follows:

> The admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

*Commonwealth v. Johnson*, 42 A.3d 1017, 1027 (Pa. 2012) (citations and quotation marks omitted).

The purpose of discovery rules is to prevent a "trial by ambush" that violates a defendant's right to due process. *Commonwealth v. Ulen*, 650 A.2d 416, 418 (Pa. 1994). Pennsylvania Rule of Criminal Procedure 573 provides that the Commonwealth, on request by the defendant, must disclose any results or reports of scientific tests that are within its possession or control. Pa.R.Crim.P. 573(B)(1)(e).

If the Commonwealth violates disclosure requirements, "[the defendant] must demonstrate how a more timely disclosure would have affected his trial strategy or how he was otherwise prejudiced by the alleged late disclosure."

*Commonwealth v. Brown*, 200 A.3d 986, 993 (Pa. Super. 2018). This Court has suggested that in most cases, "[a] continuance is appropriate where the undisclosed statement or other evidence is admissible and the defendant's only prejudice is surprise." *Commonwealth v. Smith*, 955 A.2d 391, 395 (Pa. Super. 2008) (*en banc*).

Appellant contends that the Commonwealth's disclosure of the DNA report on February 8, 2022, was "extremely late," which affected Appellant's trial strategy by precluding Appellant from obtaining a defense expert in forensics. Appellant's Br. at 21. He notes that the court had previously ordered all discovery to be exchanged by October 12, 2021, but the Commonwealth provided the DNA report 120 days after that deadline. *Id.* at 24. Appellant submits that "an Order with no teeth is not an Order at all, but rather suggestive or simply discretionary." *Id.* Therefore, Appellant argues, the trial court erred by denying the pretrial motion to preclude the DNA report.

The trial court found that the Commonwealth notified the court and the defense about the delay in the DNA processing and passed the results to Appellant as soon as they were received. Tr. Ct. Op., filed 12/13/22, at 7. The court concluded that the Commonwealth did not, therefore, intentionally violate any order of the court and acted in good faith. *Id.* After reviewing the record and case law, we agree with the trial court's finding.

Appellant was aware in November 2021 that the DNA analysis would not be available to either party until February 2022. As such, the laboratory's

report, issued one day before he received it from the Commonwealth, was a not a surprise. Despite Appellant's awareness of the forthcoming DNA results, Appellant did not seek to obtain a DNA expert at any point before trial. Significantly, Appellant also did not request a continuance to review the evidence in the time period before trial was scheduled to begin on March 21, 2022.

For the foregoing reasons, we conclude that the trial court did not err in denying Appellant's motion to suppress the firearm obtained after a police pursuit and Appellant's motion to preclude the DNA report. The police officers lawfully pursued Appellant and the trial court acted within its discretion to admit the DNA report.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023