J-S37029-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHON NIEVES | : | |
| | : | |
| Appellant | : | No. 13 EDA 2024 |

Appeal from the PCRA Order Entered November 28, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005873-2015

BEFORE: BOWES, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED NOVEMBER 18, 2024**

Jonathon Nieves (Appellant) appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. Upon careful consideration, we affirm.

This Court previously summarized the facts underlying Appellant's convictions:

> Prior to his murder, Hiram Mat[]eo [(Mateo or the victim)] had been involved in an ongoing argument with Appellant, Appellant's cousin Leroy [Gonzalez (Gonzalez)], and Naqaan Stoner [(Stoner)] … over drug territory near Fourth and Diamond Streets in Philadelphia. [] Mateo's brother, Daniel Falu [(Daniel),] had been selling drugs in that area. When [Daniel] was arrested, Appellant, [Gonzalez,] and [Stoner] began selling [drugs] there. Mat[]eo confronted them about selling in [Daniel's] territory….
>
> In the early morning hours of October 6, 2013, in the middle of the 300 block of Cecil B. Moore Avenue[] in … Philadelphia, [] Mateo was riding his bicycle. Appellant, driving a silver 1999 Honda Civic belonging to his girlfriend, Sonia Lacend [(Lacend)], with [Stoner] in the front passenger seat[,] was looking for Mateo.

Surveillance video shows that at approximately 1:50 a.m., the Honda passed Mateo while he was circling on his bike in the intersection. Appellant then reversed the auto until he reached Mat[]eo. A conversation occurred and [Stoner] got out of the passenger side of the vehicle, approached Mat[]eo and shot him several times.[1] [Stoner] got back in the Honda, which drove away.

Appellant tried to cover up his involvement, telling … Lacend that he had been robbed and her car was hijacked. He also lied to the police, filing a false police report, again claiming he was beaten and carjacked. Appellant had parked the car several blocks away [from the scene of the shooting], and to cover his tracks, he set the car on fire. Eventually[,] Appellant admitted his involvement in the murder to [] Lacend.

In addition to the surveillance footage of the murder, the prosecution produced evidence that Appellant's cell phone was in the area of the murder at the time of its commission, as well as the area where the car was set on fire at the time of the arson. Furthermore, [] cell phone records showed numerous phone calls between Appellant's phone and his drug partner, [] Gonzalez, after the homicide[,] as well as when … the car was set ablaze and when Appellant was making his false reports to the police.

*Commonwealth v. Nieves*, 242 A.3d 407, 1257 EDA 2019 (Pa. Super. 2020)

(unpublished memorandum at 1-3) (citation and brackets omitted; footnote

added; some capitalization modified).

The PCRA court detailed the procedural history in its Pa.R.A.P. 1925(a)

opinion:

On April 3, 2015, [Appellant] was arrested and charged with murder, criminal conspiracy, possession of a firearm prohibited, carrying a firearm without a license, carrying a firearm in Philadelphia and possessing an instrument of crime [(PIC)]. … Appellant's first jury trial took place on March 1st through March

_____

[1] Though surveillance video showed Stoner shooting Mateo, Appellant was not on the video.

- 2 -

9, 2016, when [Appellant] was acquitted of murder of the first degree[; however, the jury] deadlocked on the remaining charges and a mistrial [was] declared. A second jury was selected on January 17, 2017, and on [January] 24th, [Appellant] was acquitted of [PIC]. Again, a mistrial was declared as to the remaining charges. On November 27, 2017, a third jury was selected [and trial commenced].[2, 3] While deliberating, the jury foreman sent a note to the [trial] court that juror number four [(Juror No. 4)] was refusing to deliberate and had advised the other jurors that she refused to follow the law. [The trial court conducted] an *in camera* hearing with first the jury foreman and then [Juror No. 4. Juror No. 4] was dismissed on December 4[, 2017, over Appellant's objection and following a colloquy. Juror No. 4 was] replaced by juror number thirteen [(Juror No. 13)]. The reconstituted jury was charged and sent to deliberate[. The jury found Appellant guilty] … of murder of the third degree and criminal conspiracy on December 5, 2017. [Following numerous continuances, Appellant filed a] motion for extraordinary relief[.[4] A]fter a hearing on April 12, 2019, the motion was denied. Following a presentence investigation, [Appellant] was sentenced to twenty to forty years' incarceration for murder of the third

_____

[2] Appellant was represented at all three trials, and in pre-trial proceedings, by Lee Mandell, Esquire (trial counsel).

[3] Notably to this appeal, at Appellant's third trial, the Commonwealth presented testimony from George Falu (Falu), the brother of both the victim and Daniel. *See* N.T., 11/29/17, at 161-217. Falu testified to (a) the respective drug enterprises operated by the victim and Appellant; (b) the dispute between the rival operations; and (c) the events leading up to the victim's murder. *See id.* at 164-83; *see also* Supplemental PCRA Petition, 3/16/23, at 2 ("The Commonwealth needed [Falu's] testimony to inform the jury about the drug enterprise and how a dispute over the proceeds from drug sales in that territory was the motive for the crime."). Moreover, the Commonwealth presented testimony from Lacend. *See* N.T., 11/29/17, at 27-145. Lacend testified Appellant confessed to her his involvement in Mateo's murder. *See id.* at 48, 50-51.

[4] Appellant's motion for extraordinary relief is not included in the certified record or listed on the trial court's docket. *But see generally* Commonwealth's Response to Appellant's Motion for Extraordinary Relief, 2/7/19. Nevertheless, the motion is not relevant to the instant appeal.

degree and a consecutive fourteen to twenty-eight years for criminal conspiracy.

PCRA Court Opinion, 1/11/24, at 1-2 (footnotes added).

Appellant did not file post-sentence motions. Appellant timely appealed, represented by Guy Sciolla, Esquire (direct appeal counsel). On direct appeal, Appellant claimed the trial court erred in (a) disqualifying Juror No. 4 from the panel; (b) "failing to conduct a sufficient colloquy of [] Juror No. 13"; and (c) "failing to properly instruct the reconstituted jury with respect to the removal of Juror No. 4, in accordance with [Pa.R.Crim.P.] 645(C)" (governing disqualification of jurors and replacement with an alternate juror). **Commonwealth v. Nieves**, 242 A.3d 407, 1257 EDA 2019 (Pa. Super. 2020) (unpublished memorandum at 4-5, 8).

This Court affirmed Appellant's judgment of sentence on November 12, 2020. **See generally id.** (unpublished memorandum). With respect to Appellant's claim of the trial court's insufficient colloquy of Juror No. 13 and its charge to the reconstituted jury, we held Appellant had waived this claim for his failure to (a) "object during the trial court's colloquy of Juror No. 13"; and (b) "object during or after the trial court's charge to the reconstituted jury." **Id.** (unpublished memorandum at 8) (internal citations omitted); **see also id.** (unpublished memorandum at 8-9) (citing, *inter alia*, **Commonwealth v. Houck**, 102 A.3d 443, 451 (Pa. Super. 2014) ("[T]he failure to make a timely and specific objection before the trial court at the appropriate stage of the proceedings will result in waiver of the issue."

- 4 -

(citations omitted)).  With respect to Appellant's claim the trial court erred by disqualifying Juror No. 4 from the panel, this Court addressed the merits of the claim and rejected it.  **See Nieves**, 242 A.3d 407 (unpublished memorandum at 5-8).  We concluded, "where Juror No. 4 repeatedly indicated her refusal to apply the law, deliberate, or render a verdict according to the evidence, we find that it was clearly within the trial court's discretion to disqualify her from serving on the jury."  **Id.** (unpublished memorandum at 7-8) (citation and quotation marks omitted).  Appellant subsequently filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on April 6, 2021.  **See Commonwealth v. Nieves**, 252 A.3d 236 (Pa. 2021).

Appellant timely filed the instant, counseled PCRA petition on June 30, 2022, his first. Appellant raised several claims of trial counsel and direct appeal counsel's ineffectiveness.  **See** PCRA Petition, 6/30/22, at 7-28.

Appellant filed a supplemental PCRA petition on March 16, 2023. Appellant claimed the Commonwealth committed a violation of **Brady v. Maryland**, 373 U.S. 83, 87 (1963) ("the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.").  **See generally** Supplemental PCRA Petition, 3/16/23.  Specifically, Appellant argued the Commonwealth failed to disclose to the defense

an immunity agreement signed by … [the prosecutor in Appellant's case] on February 17, 2016[,[5]] promising [] Falu that he would not be prosecuted related to crimes which [were] discussed during his [trial] testimony in this case.

*Id.* at 3 (footnote added; citation and footnote omitted). The Commonwealth filed an answer to the PCRA petition on July 24, 2022.

On October 6, 2023, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing, pursuant to Pa.R.Crim.P. 907. Appellant did not respond.

On November 28, 2023, the PCRA court dismissed Appellant's PCRA petition. This timely appeal followed. Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant presents five issues for our review:

I. Did the PCRA court err in finding that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution were not violated by trial counsel's ineffective failure to move to strike the [prosecutor's] comment [in closing argument], request a mistrial and/or a curative instruction on the basis that the prosecutor referenced highly prejudicial facts not in evidence?[] Did the PCRA [court] err in finding that [direct appeal] counsel on direct appeal did not fail to preserve and argue that the trial court erred in overruling [trial] counsel's objection [to the prosecutor's comment]?

II. Did the PCRA court err in finding that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of

_____

[5] Appellant specifically references an unexecuted petition for immunity dated February 17, 2016. *See* Appellant's Brief at R.R. 2-3 (petition for immunity). This petition was never filed with or acted upon by the trial court.

the Pennsylvania Constitution were not violated by direct appeal counsel's ineffective failure to preserve and present a claim that the trial court abused its discretion for not granting a mistrial based on objectionable closing argument by the prosecutor which vouched for the veracity of two key [Commonwealth] witness[?]

III. Did the PCRA court err in finding that Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution were not violated by Trial Counsel's ineffective failure to timely object to the trial court's colloquy of alternative Juror [No. ]13 and to the [trial] court's related curative jury charge?

IV. Did the PCRA court err in finding Appellant's constitutional rights under the Sixth and Fourteenth Amendments of the U.S. Constitution and Article 1, sec. 9 of the Pennsylvania Constitution were not violated by the Commonwealth's suppression of evidence that [] Falu had been promised immunity if he testified?

V. Did the PCRA court err in finding that Appellant's constitutional right to due process of law and a fair trial were not violated by the cumulative impact of trial counsel['s and direct appeal counsel's] ineffectiveness[,] in violation of the Sixth Amendment?

Appellant's Brief at 8-9 (issues reordered; some capitalization modified).

"We review the denial of PCRA relief by examining whether the PCRA court's conclusions are supported by the record and free from legal error." *Commonwealth v. Johnson*, 289 A.3d 959, 979 (Pa. 2023) (citation omitted); *see also Commonwealth v. Miner*, 44 A.3d 684, 688 (Pa. Super. 2012) ("It is an appellant's burden to persuade us that the PCRA court erred and that relief is due."). "[T]he scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable

to the Commonwealth as the prevailing party before the PCRA court."

***Commonwealth v. Rizor***, 304 A.3d 1034, 1051 (Pa. 2023).

In his first issue, Appellant claims trial counsel was ineffective for failing to move to strike and/or move for a mistrial, based on the prosecutor's improper and prejudicial remarks during closing argument to facts purportedly not in evidence. ***See*** Appellant's Brief at 19-30. Specifically, Appellant references the prosecutor's following statement:

> [Commonwealth]: And ladies and gentlemen, let's be clear, [Stoner], that teenager [who] we saw in the [surveillance] video fire the six shots, you know it goes back to those relationships, right? The boss isn't going to do the dirty work. The boss is going to get the foot soldier to do the dirty work. It's no coincidence that [Stoner] comes out of the car. He's the one. **Hey, finish him off.**
>
> [Trial counsel]: Objection, your Honor.
>
> [THE] COURT: Overruled.
>
> [Commonwealth]: **Finish him off.** He comes out and it's easy. [Mateo] is already lying there. He's already been shot. Six FCC's, nine gunshot wounds. Ladies and gentlemen, do the math. The only possibility, that the first shots came from within that car.

***Id.*** at 21 (quoting N.T., 12/1/17, at 87 (emphasis added by Appellant)).[6]

Appellant maintains "there was no evidence of record that Appellant instructed Stoner to 'finish off' the victim." ***Id.*** (emphasis omitted); ***see also id.*** at 21-22 (pointing out Stoner did not testify at trial and "[t]here were no

_____

[6] As we discuss below in connection with Appellant's second issue, trial counsel moved for a mistrial based on different comments the prosecutor made during closing argument.

other individuals identified as being in th[e] car to overhear anything said between Appellant and Stoner."). According to Appellant,

> the prosecutor knew full well that Appellant had already been acquitted of both first[-]degree murder and all gun charges at his first and second trials, respectively. It was impermissible therefore for the prosecutor to argue that Appellant possessed a gun which he fired from the car.

*Id.* at 22 (footnote omitted).

Appellant claims the prosecutor's comment was "highly prejudicial to the defense" because it "filled in significant key evidentiary 'gaps' in the Commonwealth's theory of the case." *Id.* According to Appellant, the prosecutor's comment

> could be seen as an "admission" that Appellant had already shot Mateo when Stoner got out of the front passenger side of the car and walked around the car toward the driver's side of the car[,] where [Stoner] was to "finish him off."

*Id.* at 22-23 (citation omitted). Appellant further maintains the prosecutor's improper comment "was calculated … to enflame [the jury's] passions against the Appellant." *Id.* at 23.

Appellant contends trial counsel "had no objectively reasonable tactical basis for not moving to strike the prosecutor's comments and requesting a mistrial or at least a curative instruction." *Id.* at 27. Appellant further asserts direct appeal counsel was ineffective for not raising on direct appeal a challenge to the trial court's overruling trial counsel's objection to the prosecutor's comments. *Id.* at 28.

The Commonwealth counters the PCRA court properly denied relief on Appellant's ineffectiveness claim, as the prosecutor did not "improperly assert or imply the existence of evidence outside the record, but rather[,] made appropriate inferences from the evidence…." Commonwealth Brief at 8.

> [Appellant] was charged with third degree murder and conspiracy. To prove [Appellant's] guilt, the prosecutor argued that even though [Appellant] was not seen on camera shooting the victim himself, [Appellant] was still guilty of murder because he was a co-conspirator. The prosecutor argued that evidence that [Stoner], [Appellant's] best friend, got out of the car that [Appellant] was driving, fired at least six shots at the victim, got back into the car and [Appellant] immediately drove away all showed that [Appellant] was not an innocent bystander but rather a co-conspirator to the murder.

*Id.* at 10 (record citation omitted).

According to the Commonwealth, "[Appellant's] claim also fails for lack of prejudice. The trial court instructed the jurors that statements made during closing arguments are not evidence." *Id.* at 12.

> Under the circumstances, there would have been no basis for the extreme remedy of a mistrial. Nor has [Appellant] shown a reasonable probability that the outcome of the trial would have been different but for counsel's allegedly deficient performance.

*Id.* at 13.

> Our Supreme Court has instructed:
>
> A PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place."

- 10 -

*Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (quoting 42 Pa.C.S.A. § 9543(a)(2)(ii)). Pennsylvania law presumes "that counsel acted effectively." *Johnson*, 289 A.3d at 979 (citing *Commonwealth v. Robinson*, 82 A.3d 998, 1005 (Pa. 2013)); *see also Commonwealth v. Lesko*, 15 A.3d 345, 380 (Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential." (citation and quotation marks omitted)). A PCRA petitioner bears the burden of proving otherwise. *See Commonwealth v. Brown*, 649 Pa. 293, 196 A.3d 130, 150 (Pa. 2018).

In order to establish a claim of ineffectiveness, a PCRA petitioner must plead and prove:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from *Commonwealth v. Pierce*, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the *Pierce* prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

*Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015) (citations modified).

With respect to claims of prosecutorial misconduct during closing argument, our Supreme Court has explained:

> [C]omments made by a prosecutor to a jury during closing argument "will not form the basis for granting a new trial unless the unavoidable effect of such comments would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so they could not weigh the evidence objectively and render a true verdict." **Commonwealth v. Williams**, … 896 A.2d 523, 542 (Pa. 2006) (citations and internal quotation marks omitted). "Like the defense, the prosecution is accorded reasonable latitude and may employ oratorical flair in arguing its version of the case to the jury." **Id.** "Prosecutorial misconduct will not be found where the comments were based on the evidence or derived from proper inferences." **Id.**

**Commonwealth v. Reid**, 259 A.3d 395, 429 (Pa. 2021).

> With [] reference to a claim of prosecutorial misconduct in a closing statement, it is well settled that "[i]n reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." **Commonwealth v. Sampson**, 900 A.2d 887, 890 (Pa. Super. 2006) (citation omitted). Our review of prosecutorial remarks and an allegation of prosecutorial misconduct requires us to evaluate whether a defendant received a fair trial, not a perfect trial. **Commonwealth v. Rios**, 721 A.2d 1049, 1054 (Pa. 1998).

**Commonwealth v. Santiago-Burgos**, 314 A.3d 535, 547 (Pa. Super. 2024)

(citations modified).

Further, a "prosecutor must be permitted to respond to arguments made

by the defense" in closing arguments. **Commonwealth v. Carson**, 913 A.2d

220, 237 (Pa. 2006) (citation omitted).

> Even an otherwise improper comment may be appropriate if it is in fair response to defense counsel's remarks. Any challenge to a prosecutor's comment must be evaluated in the context in which the comment was made.

**Reid**, 259 A.3d at 429 (citation omitted).

Instantly, we conclude the prosecutor's comments were not improper. Contrary to Appellant's claim, the prosecutor never "argue[d] that Appellant possessed a gun which he fired from the car." Appellant's Brief at 22. Rather, the prosecutor argued Appellant instructed Stoner to "finish [the victim] off." N.T., 12/1/17, at 87. This comment did not improperly assert or imply the existence of evidence outside the record; rather, it constituted merely oratorical flair and was based on the evidence.[7] *See Williams*, 896 A.2d at 542. Accordingly, there is no merit to Appellant's claim of prosecutorial misconduct; trial counsel was thus not ineffective for failing to move to strike and/or move for a mistrial. *See Treiber*, 121 A.3d at 445 (counsel cannot be deemed ineffective for failing to raise a meritless claim); *see also Commonwealth v. Harris*, 884 A.2d 920, 931 (Pa. Super. 2005) (upholding trial court's rejection of appellant's prosecutorial misconduct claim, stating

_____

[7] We are persuaded by the Commonwealth's argument in its answer to the PCRA petition:

> [T]he Commonwealth was asking the jury to draw an inference based on the evidence presented throughout trial of [Appellant's] status as a "boss" drug dealer[,] that [Appellant] was the driver of the car[,] and Stoner, [Appellant's] minion, was the shooter who exited the car. N.T., 11/28/17, at 110-11, 138; N.T., 11/29/17, at 41-43, 50-51; N.T., 11/30/17, at 17-19. From this evidence, it is reasonable for the Commonwealth to argue that since [Appellant] was the "boss," Stoner was his employee, and [that Appellant] was driving the car, [after which] Stoner shot [the victim] at [Appellant's] behest.

Answer to PCRA Petition, 7/24/22, at 10 (citations modified).

- 13 -

"the prosecutor's comments did not constitute reversible error, because the comments concerned evidence already on the record and constituted oratorical flair.").

Moreover, Appellant cannot demonstrate prejudice resulting from the prosecutor's comments. Before the presentation of opening statements by counsel, the trial court instructed the jury that the opinions and arguments by counsel were not evidence, and it was solely the jury's responsibility to evaluate the credibility of the witnesses and the evidence presented at trial. *See* N.T., 11/28/17, at 17. Specifically, the trial court instructed the jury as follows:

> Now, as I told you earlier, you're the sole judges of the facts and the credibility and the weight of the evidence. You must rely on your own recollection and evaluation of the evidence during your deliberations. Not counsel's and not mine. You're not bound by any opinion that counsel or I might express about the guilt or innocence, credibility or weight of evidence, facts proven by the evidence or inferences to be drawn from the facts. You should consider the statements and arguments of counsel carefully even though they are not binding on you and are not evidence. You may be guided by them if the statements[] and arguments are supported by the evidence and appeal to your reason and judgment.

*Id.*

The trial court further instructed prior to closing arguments:

> Now, even though [closing] arguments are not evidence, they are[] very important. So I'm going to ask you to pay careful attention. When counsel makes their closing arguments, what they typically do is review the evidence with you and ask you to draw certain inferences from that evidence. That can be very helpful in deciding the case.

- 14 -

I do need you to keep in mind, however, that **you're not bound by counsel's recollection of the evidence nor are you bound by counsel's perspective of what the evidence in the case shows.** It is your recollection of the evidence and your recollection alone which must guide your deliberations in this case.

In addition, you're not limited in your consideration of the evidence to the particular evidence that counsel decides to review with you. You may and you should consider any of the evidence that came in during the trial that you believed to be material to the issues that you have to resolve.

N.T., 12/1/17, at 2-3 (emphasis added).

The trial court instructed the jury as follows during its final charge:

As I told you before, **the speeches of counsel are not part of the evidence** and you should not consider them as such. However, in deciding the case, you should carefully consider the evidence in light of the various reasons and arguments each lawyer presented. It is the right and duty of each lawyer to discuss the evidence in a manner that is most favorable to the side they represent. You should be guided by each lawyer's arguments to the extent they are supported by the evidence and insofar as they aid you in applying your own reason and common sense. However, **you are not required to accept the arguments of either lawyer.** It is for you and you alone to decide the case based on the evidence as it was presented from the witness stand and in accordance with the instructions I am now giving you….

Remember, that it is your responsibility as jurors to perform your duties and reach a verdict based on the evidence as it was presented during the trial.

N.T., 12/1/17, at 125-27 (emphasis added).

We conclude the trial court's cautionary instructions were adequate to overcome any potential prejudice to Appellant from the prosecutor's comments. *See Commonwealth v. Watkins*, 843 A.2d 1203, 1216 (Pa. 2003) (stating a jury "is assumed to have followed" a cautionary instruction,

- 15 -

and such an instruction "is presumed to be sufficient to cure any prejudice"); ***Commonwealth v. Spotz***, 716 A.2d 580, 593 (Pa. 1998) (stating a mistrial is not necessary where cautionary instructions are adequate to overcome any potential prejudice); ***see also Harris***, 884 A.2d at 930-31 (same); PCRA Court Opinion, 1/11/24, at 13 (concluding, "the [trial] court's instructions were sufficient to overcome any prejudice to [Appellant], and there is no reason to believe that the jury did not follow the court's instruction. As such, a mistrial was unnecessary."). Appellant's first issue does not merit relief.

In his second issue, Appellant maintains the PCRA court improperly rejected his claim of direct appeal counsel's ineffectiveness, asserting counsel's failure to challenge the trial court's denial of Appellant's motion for a mistrial concerning certain statements by the Commonwealth during its closing argument. ***See*** Appellant's Brief at 41-45; Appellant avers "the prosecutor impermissibly bolstered and/or vouched for Commonwealth witnesses" Lacend and Falu during closing argument. ***Id.*** at 41; ***see also id.*** at 41-42 (citing ***Commonwealth v. King***, 57 A.3d 607, 625 (Pa. 2012) ("vouching for a witness's veracity is improper because it places the prestige of the government behind the witness through personal assurances that the witness is believable, and it indicates that information unknown to the jury supports the witness's testimony.")).

Appellant specifically emphasizes the following excerpt from the closing argument:

[Commonwealth]: And [] Falu comes in and tells you, I was there. And he's somebody who was in the streets. And I submit to you[, trial counsel] wants … to smear [Falu] with aliases and talk about every problem he's had in his life. You know what? **He's somebody we can actually rely** upon because he knows the streets.

[Trial Counsel]: Objection, your Honor.

[THE COURT]: Overruled.

[Commonwealth]: He knows the streets. **He knows what's going on.**

*Id.* at 42 (quoting N.T., 12/1/17, at 62 (emphasis added by Appellant)). *But see also* N.T., 12/1/17, at 43 (the prosecutor stating earlier in his closing argument, "At the outset I want to tell you that your job is to judge the credibility of all the witnesses in this case.").

With respect to Lacend, the prosecutor stated in closing argument:

[Commonwealth:] When the police come, they are going to figure this out sooner or later. **She just tells the truth.** She –

[Trial counsel]: Objection, your Honor.

[THE COURT]: Overruled.

[Commonwealth]: **She tells the truth. She tells the truth.**

Appellant's Brief at 42-43 (quoting N.T., 12/1/17, at 83-84 (emphasis added by Appellant)).

Trial counsel moved for a mistrial based on the prosecutor's foregoing comments, outside of the presence of the jury. N.T., 12/1/17, at 90-91 (trial counsel arguing the prosecutor was improperly "attempting to attest to the veracity of … Commonwealth witnesses, which I believe is an inappropriate

comment to be made to a jury."). The trial court denied Appellant's mistrial motion. *Id.* at 91.

Instantly, Appellant argues direct appeal counsel was ineffective for failing to challenge on direct appeal the denial of Appellant's mistrial motion. *See* Appellant's Brief at 44-45. Appellant maintains the trial testimonies of Lacend and Falu were improperly "given undue weight and credibility as a direct result of the prosecutor's voucher…." *Id.* at 44. According to Appellant, trial counsel "did not have an objectively reasonable tactical basis for not asserting this potentially meritorious claim." *Id.* at 45. Appellant further asserts trial counsel's failure prejudiced him. *Id.*

The Commonwealth counters the PCRA court correctly rejected Appellant's claim of direct appeal counsel's ineffectiveness, as Appellant's underlying claim of prosecutorial misconduct lacks merit. *See* Commonwealth Brief at 19-24.

> [T]his claim fails because the record establishes that the prosecutor was not improperly vouching for [Lacend and Falu], but rather[,] properly responding to [Appellant's] attacks on these witnesses' credibility by discussing and making arguments based on the evidence presented at trial.

*Id.* at 19. According to the Commonwealth, the prosecutor made no "improper expression of the prosecutor's personal opinion" about the credibility of Lacend and Falu. *Id.* at 22. Rather, the prosecutor's comments constituted "an appropriate argument to the jury to draw inferences from the evidence…." *Id.*

"A mistrial is an 'extreme remedy' that is only required where the challenged event deprived the accused of a fair and impartial trial. The denial of a mistrial motion is reviewed for an abuse of discretion." **Commonwealth v. Laird**, 988 A.2d 618, 638 (Pa. 2010) (citations omitted); **see also Commonwealth v. Johnson**, 107 A.3d 52, 77 (Pa. 2014) ("The trial court is in the best position to assess the effect of an allegedly prejudicial statement on the jury, and as such, the grant or denial of a mistrial will not be overturned absent an abuse of discretion." (citation omitted)).

"It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses." **Santiago-Burgos**, 314 A.3d at 548 (citation omitted).

> Generally speaking, a prosecutor commits misconduct by improperly bolstering the credibility of a Commonwealth witness when the following two factors are met: (1) the prosecutor must assure the jury the testimony of the government witness is credible, and (2) this assurance must be based on either the prosecutor's personal knowledge or other information not contained in the record.

**Reid**, 259 A.3d at 429 (citation and quotation marks omitted).

> However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. **If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.** Thus, proper examination of the comments of [a prosecutor] in closing requires review of the arguments advanced by defense counsel in the defense summation.

***Santiago-Burgos***, 314 A.3d at 548 (emphasis added; internal citations and paragraph break omitted).

Instantly, the PCRA court[8] rejected Appellant's claim of direct appeal counsel's ineffectiveness in its opinion:

> A review of the record *in toto*, clearly shows that the prosecutor was arguing the evidence that had been presented and offering a reasonable inference from that evidence[. The prosecutor was also] … **combating the argument presented by the defense in their closing**, both in discussing the circumstances of the shooting and in challenging the defense's assertions that the witnesses testifying against [Appellant] could not be believed.
>
> Further, "reversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors, and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict." ***Commonwealth v. Hanible***, 30 A.3d 426, 465 (Pa. 2011) (quoting ***Commonwealth v. Cox***, 983 A.2d 666, 685 (Pa. 2009)). A review of both closings clearly shows that **the prosecutor's remarks were in response to** [**Appellant's**] **closing and could not have prejudiced the jury to preclude them from fairly weighing the evidence and rendering a true verdict**. Specifically, [**trial**] **counsel attacked Falu's credibility** [**in the defense's closing argument**], including [trial counsel's following] statements: "[Falu] was a drug dealer and had been dealing drugs for a long time"; "what two things go hand and hand with drug dealing? … One, lying to protect your name. Two, protection against threats or harm"; "That's the first part about being involved in drug dealing: Lying to protect your name"; "We know [Falu] lied here in court. You heard him lie. You saw him lie"; and "So we know [] Falu was a liar. Motivated by greed. Protection of family interests and his self-protection." (N.T., 12/1/17, pp. 9-10, 13). Likewise, [**trial**] **counsel told the jury that** [] **Lacend was unworthy of belief** [in his closing argument], as she was a "[] woman scorned, jealous." ***Id.*** at p.

_____

[8] The judge who authored the PCRA court's opinion, the Honorable Scott O'Keefe, also presided over Appellant's jury trial.

26. **The response by the Commonwealth was fair in light of the allegations made by** [**trial**] **counsel in his closing.**

PCRA Court Opinion, 1/11/24, at 10-11 (emphasis added; citations modified);

**see also Santiago-Burgos**, 314 A.3d at 548 ("If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility." (citation omitted)).

The PCRA court concluded,

[a]s the Commonwealth's closing argument clearly summarized the facts in evidence, argued reasonable inferences that could made from the evidence, and fairly responded to the allegations made in [Appellant's] closing, [Appellant's claim of direct appeal counsel's ineffectiveness related to the Commonwealth's closing argument] warrants no relief.

PCRA Court Opinion, 1/11/24, at 13.

Our review confirms the PCRA court's cogent reasoning is supported by the record and free of legal error. **See id.** at 10-11, 13. Moreover, as discussed *supra*, the trial court issued multiple cautionary instructions to the jury concerning its role as the sole arbiter of fact. **See id.** at 11 ("[T]he jury was repeatedly reminded that the opinions and arguments by counsel were not evidence, and the jury alone was to determine the credibility of the witnesses and the evidence that was presented at trial."); **see also** N.T., 11/28/17, at 17; N.T., 12/1/17, at 2-3; **id.** at 125-27. We conclude that the trial court's cautionary instructions were adequate to overcome any potential prejudice Appellant suffered from the prosecutor's comments. **See Spotz**, 716 A.2d at 593.

Accordingly, because Appellant's underlying claim lacks merit, direct appeal counsel cannot be deemed ineffective for not raising this issue on direct appeal. *See Treiber*, 121 A.3d at 445. Appellant's second issue does not merit relief.

In his third issue, Appellant argues the PCRA court erred in denying relief on his claim of trial counsel's ineffectiveness for failing to object to the trial court's purportedly "defective" colloquy of Juror No. 13, following the removal of Juror No. 4. *See* Appellant's Brief at 30-40. Specifically, the trial court colloquied Juror No. 13 as follows:

COURT OFFICER: You are juror number 13?

JUROR [NO. ]13: Yes.

COURT OFFICER: You are now juror number four. ….

THE COURT: I appreciate you coming back. I know it's an inconvenience but unfortunately[, **Juror No. 4**] **was *dismissed***. We are going to put you in number four. I have to ask you whether or not you've been exposed to any improper influences.

JUROR [NO. 13]: No.

THE COURT: Have you read anything or heard anything about this case other than what you [have] heard or seen in the courtroom?

JUROR [NO. 13]: No.

THE COURT: Any questions?

[TRIAL COUNSEL]: No.

THE COURT: Thank you very much.

[TRIAL COUNSEL]: Well, just one.

- 22 -

THE COURT: Yes.

[TRIAL COUNSEL]: Have you had any conversations or discussions with the other 11 jurors this morning about the case?

JUROR [NO. 13]: No. I tried. No.

[THE COMMONWEALTH]: Ma'am, you remember before you were dismissed the judge read you some instructions to not talk about the case with anyone. You are only to consider the case when you're with the jury as a whole during deliberations.

Have you abided by all the rules and instructions that the judge provided you?

[JUROR NO. 13]: Yes.

[THE COMMONWEALTH]: Thank you so much.

THE COURT: Thank you ma'am. We will have [the jury] brought out as a whole.

N.T., 12/5/17, at 3-4 (emphasis added).

Instantly, Appellant claims the trial court's informing Juror No. 13 that Juror No. 4 was "dismissed" unduly prejudiced Appellant and deprived him of a fair trial. Appellant's Brief at 34; *see also id.* (asserting the trial court should have instead said that Juror No. 4 was "excused"). According to Appellant, the trial court

> essentially advised [] Juror [No.] 13 that Juror [No.] 4 had done something **wrong** when [Juror No. 4] argued to the rest of the jury that there was insufficient evidence to establish that Appellant was the driver.

*Id.* at 34-35 (emphasis in original).

Appellant contends the trial court further erred in failing to "give appropriate cautionary instructions to the entire [reconstituted] jury." ***Id.*** at 35. Appellant challenges as inadequate the following cautionary instruction:

> THE COURT: Good afternoon, ladies, and gentlemen. Juror [No. 4] has been **removed**. She's going to be replaced with Juror [No.] 13 but that can't happen until 9:00 tomorrow morning. I'm going to advise you now and I'll re-advise you again tomorrow, you're going to be a reconstituted jury.
>
> As a reconstituted jury, you must set aside and disregard all past deliberations and begin deliberations anew **so as to eliminate the influence of previous Juror** [**No. 4**]. You, the reconstituted jury, are going to consider the evidence in the context of full and complete deliberations with the new juror. That means you're not allowed to discuss what was said in the prior deliberations. …

***Id.*** at 35-36 (quoting N.T., 12/4/17, at 12-13) (emphasis added by Appellant; some capitalization and formatting modified); ***see also*** N.T., 12/5/17, at 5 (trial court again cautioning the jury: "As you are aware, [Juror No. 4] has been replaced by Juror [No.] 13. … I'm going to tell you as a reconstituted jury, you must set aside and disregard all past deliberations and begin deliberations anew so as to eliminate the influence of previous Juror [No. 4]." (some capitalization modified)).

According to Appellant, "the trial court erred by not simply instructing the reconstituted jury that [] Juror [No. ]4 **had not been replaced due to her views on the case**." Appellant's Brief at 35 (emphasis in original; some capitalization modified). Appellant claims the trial court's charge violated the

"clear and unequivocal" language of Pa.R.Crim.P. 645, which provides, in subsection (C)(2), as follows:

> [O]nce the jury is reconstituted following the replacement of the principal juror by the alternate juror, [the trial court must] colloquy and instruct the reconstituted jury on the record that:
>
> > **(a)** the jurors understand that **the reason the discharged juror was being replaced has nothing to do with the discharged juror's views on the case**; and
> >
> > **(b)** the reconstituted jury understands that they must set aside and disregard all past deliberations and begin deliberations anew so as to eliminate the influence of the excused juror and so that the reconstituted jury will consider the evidence in the context of full and complete deliberations with the new juror.

Pa.R.Crim.P. 645(C)(2) (emphasis added); ***see also*** Appellant's Brief at 38.

Appellant claims "[t]rial counsel ineffectively failed to object to the charge given to the reconstituted jury." Appellant's Brief at 36. Appellant surmises,

> [t]he reconstituted jury would [] summarily dismiss disgraced Juror [No.] 4's concerns that there was insufficient evidence, and simply uniformly vote for guilt. That is in fact what apparently happened in that their verdict came very quickly on the heels of the reconstituted jury being sent back to deliberate. They didn't deliberate "all over again" from the start as instructed.

***Id.*** at 39 (formatting modified). According to Appellant, trial counsel "could not have had any objectively reasonable tactical basis for not timely objecting to Juror [No.] 13's colloquy and to the charges given to the reconstituted jury." ***Id.*** at 38. Appellant further claims "[t]here is a reasonable probability that,

- 25 -

but for [trial] counsel's errors, the result of the proceeding would have been different…." *Id.* at 39.

Finally, Appellant argues the trial court erred in removing Juror No. 4. *See*, *e.g.*, *id.* at 15-16 ("[Juror No. 4] was improperly removed from the jury."); *id.* at 32 ("[I]f Juror [No. ]4 had not been removed, it would have resulted in yet another hung jury."); *see also id.* at 30-32. Appellant, however, concedes that "[t]he propriety of the trial court's dismissal of Juror [No. ]4 was asserted on direct appeal." *Id.* at 30 n.5 (some capitalization modified).

The Commonwealth counters the PCRA court properly denied relief on Appellant's claim of trial counsel's ineffectiveness, as Appellant's underlying claim of trial court error lacks arguable merit. *See* Commonwealth Brief at 13-19.

> Because Juror No. 4 was in fact dismissed by the trial court, it did not abuse its discretion by accurately stating that Juror No. 4 was dismissed. [Appellant's] speculation that Juror No. 13 would have somehow assumed from the court's use of the word "dismissed" that the court **meant** that "Juror No. 4 had done something wrong when she argued to the rest of the jury that there was insufficient evidence to establish that Appellant was the driver" (Brief for Appellant at 35) is illogical and strained….

*Id.* at 16 (emphasis in original); *see also id.* ("Unsurprisingly, [Appellant] has not cited any case where the use of the word 'dismissed' was deemed improper in a similar factual scenario."). The Commonwealth further claims there is no arguable merit to Appellant's underlying claim that the trial court erred in its charge to the reconstituted jury. *See id.* at 16-18.

Appellate courts "review with deference decisions regarding instructions submitted to a jury; we may reverse the trial court only where we find that it abused its discretion or committed an error of law." ***Commonwealth v. Hornberger***, 74 A.3d 279, 282 (Pa. Super. 2013). A trial court "has broad discretion in its phrasing of jury instructions so long as the issue is adequately, accurately, and clearly presented to the jury for its consideration." ***Commonwealth v. Brown***, 200 A.3d 986, 992 (Pa. Super. 2018) (citation and quotation marks omitted). "A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue." ***Commonwealth v. Rush***, 162 A.3d 530, 540 (Pa. Super. 2017) (citation omitted). "We must consider the charge as a whole, rather than isolated fragments. We examine the entire instruction against the background of all evidence presented, to determine whether error was committed." ***Id.*** (internal citations and quotation marks omitted).

Preliminarily, to the extent Appellant alleges the trial court erred in removing Juror No. 4, this claim is not cognizable because it was previously litigated. To be eligible for relief under the PCRA, the petitioner must show that "the allegation of error has not been previously litigated or waived." 42 Pa.C.S.A. § 9543(a)(3). "An issue is previously litigated if 'the highest appellate court in which [appellant] could have had review as a matter of right has ruled on the merits of the issue.'" ***Commonwealth v. Cousar***, 154 A.3d 287, 296 (Pa. 2017) (quoting 42 Pa.C.S.A. § 9544(a)(2)). A PCRA petitioner

"cannot obtain post-conviction review of claims that were previously litigated by alleging ineffectiveness of prior counsel and presenting new theories to support the previously litigated versions of the claims." ***Commonwealth v. Lambert***, 797 A.2d 232, 240 (Pa. 2001) (citations omitted). Instantly, Appellant raised a challenge on direct appeal asserting trial court error for removing Juror No. 4, which this Court rejected. ***See Nieves***, 242 A.3d 407 (unpublished memorandum at 5-8); ***see also*** PCRA Court Opinion, 1/11/24, at 13 (stating claim was previously litigated).

We further observe that in its opinion, the PCRA court determined that it properly rejected Appellant's claim of trial counsel's ineffectiveness based on the trial court's instruction to Juror No. 13:

> Clearly[, the trial] court adequately and accurately advised … [J]uror [No. 13], and [Appellant] cannot demonstrate any prejudice caused to him. As such, trial counsel cannot be deemed ineffective for failing to object to an accurate statement made to the juror during the colloquy.

PCRA Court Opinion, 1/11/24, at 20.

Our review confirms the PCRA court's reasoning is supported by the record and free of legal error. ***See id.***; ***see also*** N.T., 12/5/17, at 3-4. The trial court did not (a) err in informing Juror No. 13 that Juror No. 4 had been "dismissed"; or (b) inform Juror No. 13 about the circumstances of Juror No. 4's dismissal. Contrary to Appellant's claim, the trial court was not required to state that Juror No. 4 had been "excused" as opposed to "dismissed." ***See***

*Brown*, 200 A.3d at 992 (stating trial courts have broad discretion in their phrasing of jury instructions).

However, the PCRA court conceded the trial court's charge to the reconstituted jury did not strictly comply with Pa.R.Crim.P. 645(C)(2)(a), *supra*:

> Clearly, the court did not charge the jury that the dismissed juror's view of the case was not the reason for … Juror[ No. 4's] removal[;] however[,] any error in failing to do so was harmless.[9] … [T]he [jury] foreperson had previously sent a note to the [trial] court concerning Juror [No. 4's] refusal to deliberate and refusal to follow the law. … Furthermore, the foreperson was consulted, and that juror informed the court and attorneys that Juror [No. 4] would not deliberate with the other jurors and had told them she did not care what the law was[;] she refused to abide by the instructions that had been provided the jurors. (N.T., 12/4/[17],

---

[9] The Pennsylvania Supreme Court has instructed:

> The harmless error doctrine … reflects the reality that the accused is entitled to a fair trial, not a perfect trial. We have described the proper analysis as follows:
>
> > Harmless error exists if the record demonstrates either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Hairston*, 84 A.3d 657, 671-72 (Pa. 2014) (citations and quotations omitted); *see also Commonwealth v. Noel*, 104 A.3d 1156, 1169 (Pa. 2014) ("If a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed." (citation omitted)).

pp. 2-3). Given those discussions with the foreperson, who twice confirmed the unwillingness to deliberate, and who notified the court of [Juror No. 4's] refusal to follow the applicable law, it is crystal clear that **the jurors were aware that Juror [No. 4] was removed for that reason**. As such, any error in failing to specifically advise the jury of not only what they knew, but what they had advised the court[,] was harmless. … [Appellant] falls woefully short of his burden to claim ineffective assistance of [trial] counsel.

PCRA Court Opinion, 1/11/24, at 21-22 (emphasis and footnote added; citations and some capitalization modified).

We agree with the PCRA court's reasoning and conclusion, which is supported by the record and the law. *See id.* Accordingly, the PCRA court did not err in denying relief on Appellant's claim of trial counsel's ineffectiveness. *See*, *e.g.*, *Commonwealth v. Alexander*, 296 A.3d 1, 7-8 (Pa. Super. 2023) (holding PCRA court properly rejected petitioner's claim of trial counsel's ineffectiveness for failing to request a mistrial, following the trial court's removal of a juror and seating of an alternate juror pursuant to Pa.R.Crim.P. 645(C)). Appellant's third issue does not merit relief.

In his fourth issue, Appellant contends the PCRA court improperly denied relief on his claim of a *Brady* violation concerning Falu and the above-described, unexecuted petition for immunity. *See* Appellant's Brief at 45-53. Appellant emphasizes the Commonwealth never disclosed the existence of this document to the defense. *Id.* at 48, 50; *see also id.* at 48 ("The Commonwealth had an ethical and a legal duty under the Due Process Clause to disclose this information even after Appellant was convicted." (emphasis

omitted)). Appellant, however, "concedes that it does not appear … that the [immunity] agreement was officially signed by the trial court and filed with the Clerk of Courts…." *Id.* at 50; *see also id.* (positing Falu nevertheless "likely had been verbally advised of the Commonwealth's intention not to charge him with any crimes stemming from his testimony."). "Certainly, the defense in this case would have been entitled to know of the existence of the promise from the DA's Office in order to impeach[ Falu's] testimony." *Id.* at 51.

The Commonwealth counters the PCRA court properly denied relief on Appellant's *Brady* claim, as he failed to meet his burden of asserting a *Brady* violation. *See* Commonwealth Brief at 24-26.

> [Appellant] failed utterly to show that [the] Commonwealth suppressed any evidence that witness [] Falu was in fact offered, let alone actually granted, immunity for testifying against … [Appellant]. It is common practice for prosecutors to draft petitions for immunity for use in the event that a witness refuses to testify. … [Appellant] cites nothing other than the physical copy of the unexecuted petition for immunity in the prosecutor's file for the proposition that Falu was actually offered immunity. The existence of such a document in and of itself is not significant.

*Id.* at 25-26 (formatting modified); *see also id.* at 25 (claiming Falu "testified consistently at all three trials, although the Commonwealth was initially concerned that he would not appear and testify voluntarily.").

Preliminarily, we recognize that a "*Brady* claim is cognizable on collateral appeal under the PCRA." *Commonwealth v. Simpson*, 66 A.3d 253, 264 n.16 (Pa. 2013) (citing, *inter alia*, 42 Pa.C.S.A. § 9543(a)(2)(vi)). A

*Brady* claim "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020). To prove a *Brady* violation, the defendant must show that "(1) the prosecutor has suppressed evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citation omitted). "Conversely, the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial does not establish materiality in the constitutional sense." *Commonwealth v. Dennis*, 17 A.3d 297, 308 (Pa. 2011) (citation and brackets omitted); *see also Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011) ("*Brady* does not require the disclosure of information that is not exculpatory but might merely form the groundwork for possible arguments or defenses." (citation and quotation marks omitted)). The burden of proof is on the defendant to demonstrate that the Commonwealth withheld or suppressed material evidence. *Paddy*, 15 A.3d at 451.

Here, the PCRA court opined it properly denied relief on Appellant's meritless *Brady* claim:

> It is important to note that the [record does] not show that the [Falu petition for immunity] was either filed or acted upon by the [trial] court. In their answer to the supplemental PCRA [petition], the Commonwealth avers immunity was never offered to [Falu; rather, the petition for immunity was] only prepared in the event

- 32 -

that [he] failed to testify at [Appellant's] trial. [***See*** Answer to PCRA Petition, 7/24/22, at 24-25.]

42 Pa.C.S.[A.] § 5947(b) is the statutory authority for the issuance of immunity of a witness:

> []**(b) Request and issuance.** The Attorney General or a district attorney may request an immunity order from any judge of a designated court, **and that judge shall issue such an order,** when in the judgment of the Attorney General or district attorney:
>
> > (1) the testimony or other information from a witness may be necessary to the public interest; and
>
> > (2) a witness has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination.[]

[***Id.*** (emphasis added; formatting modified).] Clearly, **the court is the only one who can provide immunity and that was not done in this case** and as such[, Appellant's] claim fails.

[Appellant] further argues that the mere existence of the [petition for immunity] in the prosecutor's file establishes that Falu must have been advised that he would not be prosecuted in relation to any drug or gun crimes about which he would testify. [Appellant] concedes that no immunity order was signed by any court, nor that anyone was asked to provide immunity to Falu. [**Appellant**] **has provided no statement from either Falu or any other witness to substantiate any claim that immunity was offered.** No affidavit provides the name of any witness who would testify to any of the facts or circumstances of the immunity allegation. The law is clear that unsubstantiated fishing expeditions are not the basis of granting a hearing, and the [PCRA] court properly denied … [relief] on this issue.

PCRA Court Opinion, 1/11/24, at 5-6 (emphasis added; formatting modified).

Our review confirms the PCRA court's reasoning is supported by the record and the law, and we agree with its conclusion. ***See id.*** As Appellant

- 33 -

failed to meet his burden of proving a **Brady** violation, **see Tharp**, 101 A.3d at 747, the PCRA court properly denied relief on his ineffectiveness claim asserting a **Brady** violation. Appellant's fourth issue does not merit relief.

In his fifth and final issue, Appellant argues the above-described errors of trial counsel and direct appeal counsel, when considered cumulatively, entitle him to collateral relief. **See** Appellant's Brief at 53-55. Appellant claims, "[b]ut for the[] cumulative errors[,] there would have been a reasonable probability that the outcome of the proceedings would have been different." **Id.** at 54; **see also id.** at 55 ("The cumulative effect of counsel[s'] ineffective acts and omissions rendered the verdict inherently unreliable….").

The Commonwealth counters the PCRA court did not err in denying relief on Appellant's claim of his prior counsels' cumulative ineffectiveness "[b]ecause he has not shown the existence of multiple 'errors' to cumulate…." Commonwealth Brief at 27.

We have already concluded none of Appellant's individual ineffectiveness claims have arguable merit. The Pennsylvania Supreme Court

> has repeatedly held that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. **Commonwealth v. Johnson**, 966 A.2d 523, 532 (Pa. 2009). Thus, to the extent claims are rejected for lack of arguable merit, there is no basis for an accumulation claim. **Commonwealth v. Sattazahn**, 952 A.2d 640, 671 (Pa. 2008).

**Commonwealth v. Koehler**, 36 A.3d 121, 161 (Pa. 2012) (citations modified); **see also Commonwealth v. Hutchinson**, 25 A.3d 277, 319 (Pa. 2011) ("A bald averment of cumulative prejudice does not" entitle a PCRA

petitioner to relief); PCRA Court Opinion, 1/11/24, at 22 (citing *Hutchinson*). Accordingly, Appellant's final claim of cumulative error does not merit relief.

Based on the foregoing, we conclude the PCRA court did not err or abuse its discretion in dismissing Appellant's first PCRA petition. We thus affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/18/2024